

JHa.cpl

LEONARDO M. RAPADAS
United States Attorney
MARIVIC P. DAVID
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortes Avenue
Hagatna, Guam 96910
PHONE: (671) 472-7332
FAX: (671) 472-7334

Attorneys for United States of America

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br><br>JOON HYUN HA,<br>Defendant. | ) CRIMINAL CASE NO. **05 - 0 0 0 1 5**<br>)<br>) **COMPLAINT**<br>)<br>) **ATTEMPTED ILLEGAL**<br>) **REENTRY OF REMOVED ALIEN**<br>) [8 U.S.C. § 1326 (a) and (b)(2)]<br>)<br>)<br>)<br>) |

THE UNDERSIGNED COMPLAINANT CHARGES UPON INFORMATION AND BELIEF THAT:

On or about April 24, 2005, in the District of Guam, the defendant herein, JOON HYUN HA, an alien, did unlawfully and intentionally attempt to re-enter the United States after having been removed and deported from the United States on or about February 21, 2001, at Arlington, Virginia after having been convicted of an aggravated felony, to wit: aggravated assault in violation of Korean law on or about February 1998 in Seoul, Korea, and that prior to his re-embarkation from a place outside the United States, the defendant knew he had not received the

consent of the Attorney General of the United States or his successor, the Secretary of Homeland Security (Title 6, United States Code, Sections 202(3), (4) and 557) to reapply for admission and to re-enter the United States, in violation of Title 8, United States Code, Sections 1326 (a) and (b)(2).

COMPLAINANT FURTHER STATES:

My name is Byron Farley, and I am a Customs Enforcement Officer, formerly with the United States Immigration and Naturalization Service as a Senior Immigration Inspector, now with the United States Customs and Border Protection ("CBP"), a component of the Department of Homeland Security. I have been employed by these two agencies for over 16 years.

1. My duties include investigation of violations of Titles 8 and 18 of the United States Code as they apply to violations of U.S. immigration laws. The information contained in this affidavit is based upon witness interviews, the collection of evidence, document analysis, and reports from other officers and agencies. Based upon my knowledge, training, and experience with the Immigration and Nationality Act (I&NA), I hereby make the following affidavit relating to the above named individual:

2. On April 24, 2005, JOON HYUN HA arrived from Seoul, Korea on Korean Airlines Flight KE805 at approximately 0150 and presented himself for inspection before CBP Officer Joyce Jacob. HA presented Korean passport number SC1716847, issued on March 31, 2005, I-94 Arrival and Departure Record, I-736 Guam Visa Waiver Form and a round trip ticket to Seoul, Korea. A computer check revealed that he was a possible match for conviction of an aggravated felony and for having been ordered removed and deported from the U.S. in 2001.

3. With the assistance of Korean Interpreter, Ok Pil Salas, Officer Jacob asked HA if this was his first time to Guam, and he said yes. He denied that he had ever been to the U.S.

- 2 -

mainland. Officer Jacob asked his purpose for traveling to Guam and he stated "marriage." HA's spouse, Min Jung Park, presented herself for inspection at the same time. HA was sent to secondary for further questioning and examination, and his spouse was admitted.

4. At secondary inspection Korean Interpreter Salas assisted CBP Officer Paul Capistrano during his interview with HA. HA told Officer Capistrano that he was a green card holder but gave up his green card after he got in trouble for assaulting someone on board an aircraft. HA said that it took place in New York and that nothing came out of the case, however, he was later deported back to Korea. Officer Capistrano conducted an automated fingerprint check on HA with negative results.

5. Customs Enforcement Officer (CEO) Edith Conway arrived at the airport at approximately 08:00 hours and was briefed by Officers Capistrano and Jacob about what transpired at primary and secondary inspection. CEO Conway conducted more systems checks and it appeared that HA was ordered removed by an Immigration Judge on about February 1, 2001.

6. CEO Conway then contacted the National Records Center (NRC) who had custody of HA's original immigration file and asked that they email some of the documents from the file such as; removal orders by the Immigration Judge (IJ), conviction documents, warrant of removal, and I-294 warning to alien removed or deported. While waiting for the file documents to arrive, CEO Conway interviewed HA.

7. CEO Conway interviewed HA with the assistance of a telephonic Korean interpreter. During the interview HA stated that he was on Guam for his honeymoon and was expected to depart on Wednesday. He said his father petitioned for him to become a green card holder many years ago, but decided to "turn in" his green card and return to Korea where he was employed

- 3 -

and could be close to his mother. HA admitted to an arrest for fighting in Korea when he was young, before he joined the Korean military. For this offense, he said he was convicted for assault and was sentenced to one year, but spent only a month in jail. He denied any other arrests in Korea, the U.S. or anywhere else in the world.

8. CEO Conway examined HA's Korean passport, Form I-94 Arrival and Departure Record, airline ticket, and Form I-736 Guam Visa Waiver Information. HA admitted that he completed both the I-94 and I-736 by himself. He said he marked "NO" on the Guam Visa Waiver Form (indicating that the various grounds for exclusion to the U.S. did not apply to him) because he believed the translation of the form asks if he was ever in jail. HA claimed that he was never incarcerated and therefore marked "NO." HA said he was deported from New York but was not clear on what grounds he was removed. HA said he thought he gave up his green card (resident alien status) voluntarily. HA stated that since his departure from the U.S. in 2001 he has never attempted to apply for a U.S. visa or waiver of ineligibility to reenter the U.S. He further stated that he never sought to obtain advance permission to reapply for admission to the U.S. via the Attorney General.

9. When CEO Conway received the requested documents from the NRC, there was an Order of the immigration Judge dated February 1, 2001, ordering the removal of HA on the basis that HA was found inadmissible to the U.S. under sections 212(a)(2)(A)(i)(I) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, i.e., HA was convicted of aggravated assault in violation of Korean law on about February 1998 in Seoul, Korea, and of assault within maritime and territorial jurisdiction (aboard on aircraft) in violation of 18 U.S.C. § 113(a)(5) on February 17, 2000, in the U.S. District Court for the District of Alaska. HA's removal was effected on February 21, 2001, and prior to his removal he was provided with a warning that

- 4 -

1   explained he was prohibited from entering, attempting to enter, or being in the U.S. at any time

2   because he had been convicted of a crime designated as an aggravated felony, unless he obtained

3   the necessary permission to reenter.

4
5       10.  Based on the forgoing I have probable cause to believe that JOON HYUN HA has

6   committed the offense of Attempted Illegal Reentry of Deported Alien in violation of Title 8,

7   United States Code, Sections 1326 (a) and (b)(2).

8       DATED THIS 25th day of April 2005.

9

10

11  _____
    BYRON C. FARLEY
12  Customs Enforcement Officer
13  U.S.  Customs and Border Protection

14
15      SUBSCRIBED AND SWORN to before me this 25th day of April 2005.

16

17  _____
    JOAQUIN V.E. MANIBUSAN, JR.
18  Magistrate Judge
19  District Court of Guam

20

21

22

23

24

25

26

27

28                                    - 5 -